1

1               UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK
2  - - - - - - - - - - - - - - X
                       :
3                        :
  UNITED STATES OF AMERICA,  :   23-CR-429(NGG)
4                       :
5     -against-          :   United States Courthouse
                       :   Brooklyn, New York
6                       :
  NIKOLAY GRIGOREV,        :
7                       :   January 7, 2025
            Defendant.   :   2:30 p.m.
8  - - - - - - - - - - - - - - X
                       :
9

          TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
10      BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
            UNITED STATES DISTRICT JUDGE
11

12            A P P E A R A N C E S:

13  For the Government:  BREON PEACE, ESQ.
                  United States Attorney
14                Eastern District of New York
                   271-A Cadman Plaza East
15                 Brooklyn, New York 11201
                BY: ARTIE McCONNELL, ESQ.
16                 Assistant United States Attorney

17  For the Defendant:   MIRVIS & ASSOCIATES P.C.
                  28 Dooley Street
18                Brooklyn, New York 11235
                BY: TONY MIRVIS, ESQ.
19

20  REPORTED BY:

21  Kristi Cruz, RMR, CRR, RPR
  Official Court Reporter
22  kristi.edny@gmail.com

23  Proceedings recorded by computerized stenography.  Transcript produced by
  Computer-Aided Transcription.
24

25             *     *     *     *     *

PROCEEDINGS                                    2

1           (In open court.)

2           THE COURTROOM DEPUTY:  Criminal Cause for

3   Sentencing.

4           Beginning with the Government, please state your

5   appearances.

6           MR. McCONNELL:  Your Honor, good afternoon.

7           Artie McConnell for the United States.

8           THE COURT:  Good afternoon.

9           THE PROBATION OFFICER:  And Frank Nikolaidis for

10  the Probation Department.

11          THE COURT:  Good afternoon.

12          MR. MIRVIS:  Good afternoon, Your Honor again,

13  Judge.

14          Tony Mirvis appearing on behalf of Mr. Grigorev

15  who is here to my left.

16          THE COURT:  Good afternoon to both of you.

17          THE DEFENDANT:  Good afternoon, Your Honor.

18          THE COURT:  Please be seated, everyone.

19          This is a sentencing proceeding for Nikolay

20  Grigorev in case 23-CR-429.  The defendant pleaded guilty to

21  Count One of the indictment against him charging a

22  conspiracy to defraud the United States.  That was on

23  April 30, 2024 pursuant to a plea agreement.  Counts Two,

24  Three, and Four are open.

25          Is that right, Mr. McConnell?

PROCEEDINGS                                   3

1          MR. McCONNELL:  Yes, Your Honor.

2          THE COURT:  The process of sentencing, the first

3    step for the Court to follow is to identify the materials

4    that it reviewed in connection with this proceeding.  The

5    first of those is the Presentence Investigation Report that

6    was filed on October 11, 2024 by Mr. Nikolaidis, who is a

7    Senior United States Probation Officer.

8          How long have you been with Probation?

9          THE PROBATION OFFICER:  Just over five years.

10         THE COURT:  Okay.  All in the Eastern District of

11   New York?

12         THE PROBATION OFFICER:  Yes.

13         THE COURT:  Has the Government seen that report?

14         MR. McCONNELL:  Yes, we have, Your Honor.

15         THE COURT:  And has the defense?

16         MR. MIRVIS:  Yes, Judge.

17         THE COURT:  Have you shared the report with your

18   client?

19         MR. MIRVIS:  I have, Judge, yes.

20         THE COURT:  Okay.  Very good.

21         The next item is the sentencing submission by the

22   United States, and that was sent to the Court and filed on

23   October 23, 2024.

24         Has the defense reviewed that?

25         MR. MIRVIS:  Yes, Judge, we have.

PROCEEDINGS                4

1          THE COURT:  And you reviewed it with your client?

2          MR. MIRVIS:  Yes, Judge.

3          THE COURT:  Okay.  Very good.

4          And then there is a sentencing submission by the

5    defense submitted to the Court on December 29, 2024.

6          Has the Government received and reviewed that?

7          MR. McCONNELL:  Yes.

8          THE COURT:  Anything else?

9          MR. McCONNELL:  Not from the Government, Judge.

10         MR. MIRVIS:  Not from the defense, Judge.

11         THE COURT:  Thank you very much.

12         The defendant, as I said, pleaded guilty pursuant

13   to a plea agreement on April 30, 2024.  Pursuant to that

14   agreement, the defendant agreed not to appeal or otherwise

15   challenge the sentence in this case if it is 41 months or

16   below.  The sentencing guideline that is proposed to be

17   followed is contained in the Presentence Report.

18         Has the Government reviewed the guideline

19   calculation?

20         MR. McCONNELL:  We have, Your Honor.  I'm just

21   looking and making sure it's the same one as in the plea

22   agreement.

23         THE COURT:  In the plea agreement, it's on page

24   8 -- I'm sorry, rather, in the PSR it's page 8.  In the plea

25   agreement I think it's the same.

PROCEEDINGS                                    5

1          MR. McCONNELL:  It is the same, Judge.

2          MR. MIRVIS:  It is, Judge, yes.

3          THE COURT:  And the total offense level was a 19.

4    The defendant is in Criminal History Category I.  The

5    sentencing range for total offense level 19 in Criminal

6    History Category I is 30 to 37 months in the custody of the

7    Attorney General.

8          Does the Government agree with that computation?

9          MR. McCONNELL:  Yes, we do.

10          THE COURT:  Does the defense?

11          MR. MIRVIS:  Yes, Judge.

12          THE COURT:  And the Court agrees, as well.  So the

13    total offense level of 19, in Criminal History Category I,

14    the sentencing range under the guidelines, which are only

15    advisory, is 30 to 37 months in the custody of the Attorney

16    General.

17          Now, the defendant is a U.S. citizen, but received

18    his citizenship -- he was born in Russia, but he applied for

19    U.S. citizenship when he came to the United States; is that

20    right?

21          MR. MIRVIS:  Yes.

22          THE COURT:  In the *Farhane* case, there was a

23    discussion about denaturalizing certain individuals who

24    plead guilty to felonies whose citizenship is through

25    naturalization.

PROCEEDINGS                                    6

1              Have you reviewed that with your client?

2              MR. MIRVIS:  I have, Judge, yes.

3              THE COURT:  And would he be subject to the Second

4     Circuit's caselaw with regard to *Farhane*?

5              MR. MIRVIS:  I don't believe he would, Judge.

6              THE COURT:  Okay.  So you're satisfied that you've

7     informed your client of any possibility of being

8     denaturalized by virtue of having pleaded guilty to a

9     felony?

10             MR. MIRVIS:  Yes, Judge, I have.

11             THE COURT:  If it appeared that he might be, I

12    would offer the defense the opportunity of withdrawing a

13    plea.  But inasmuch as it doesn't seem to you or to the

14    Court, actually, that that would be the case, I don't think

15    that's necessary.  Do you?

16             MR. MIRVIS:  I don't, Judge.  I agree with the

17    Court.

18             THE COURT:  Okay.  It's your decision, not mine.

19             MR. MIRVIS:  It is, Judge.

20             THE COURT:  Good.

21             So the next step is for the Court to consider the

22    appropriate sentence, a sentence that is sufficient but not

23    greater than that necessary to fulfill the purposes of

24    sentencing.  And to do that, we must look to the factors

25    that should be considered by the Court before reaching an

PROCEEDINGS                                    7

1   appropriate sentence, and they are set forth in Title 18,

2   United States Code, Section 3553(a), and they include the

3   following categories:

4           The Court shall consider in sentencing the nature

5   and circumstances of the offense and the history and

6   characteristics of the defendant, and consider the need for

7   the sentence imposed to reflect the seriousness of the

8   offense, to promote respect for the law, and to provide just

9   punishment for the offense; to afford adequate deterrence to

10  criminal conduct; to protect the public from further crimes

11  of the defendant; to provide the defendant with needed

12  educational training, medical care, or other correctional

13  treatment in the most effective manner.  And it's important

14  that the sentence provide deterrence of future crimes not

15  only for the defendant, but also for others who may engage

16  in similar or wish to engage in similar illegal acts.

17          So the first person that I would like to ask is

18  Mr. McConnell to state the Government's position on the

19  3553(a) factors.

20          MR. McCONNELL:  Thank you, Your Honor.

21          First, Judge, I'm largely going to reiterate

22  what's been in our written submission, but I'll summarize --

23          THE COURT:  You can just summarize the relevant

24  and salient factors.

25          MR. McCONNELL:  So obviously the conduct here is

PROCEEDINGS                                 8

1    very serious.  I don't believe that --

2                THE COURT:  So what happened here?

3                MR. McCONNELL:  So this defendant was a cog in

4    what was a export control and smuggling operation where

5    certain types of microelectronics that had dual use

6    applicability -- in other words, they could be used for both

7    civilian and military purposes -- were sent over to Russia.

8    Now, prior to the 2022 are invasion of Ukraine, these were,

9    generally speaking, legal transactions.  There were no real

10   licensing restrictions on sending these parts to Russia.

11   That being said, they were prohibited from being used in

12   certain military applications, including, as in this case,

13   unmanned aerial vehicles, or UAVs.

14               THE COURT:  Meaning drones.

15               MR. McCONNELL:  Drones, yes.

16               THE COURT:  Drones that could be used in military

17   activity?

18               MR. McCONNELL:  And have been, yes.

19               Once the large amount of sanctions and export

20   controls were implemented as a result of the invasion, the

21   defendant and the other charged individuals, who are still

22   at large in this case, conspired to continue to send these

23   microelectronic parts to Russia, in violation of those

24   export controls.  You'll see from this case that there was

25   one successful shipment that was, in fact, consummated, and

PROCEEDINGS                                          9

1    others were contemplated --

2              THE COURT:  How did that get consummated?

3              MR. McCONNELL:  It was sent through a third

4    country transshipment point with doctored paperwork to

5    indicate that the end user was in a nonrestricted country.

6              THE COURT:  Turkey?

7              MR. McCONNELL:  Turkey.

8              THE COURT:  So where was it sent to?

9              MR. McCONNELL:  To Estonia.

10             THE COURT:  Estonia.  Which is nowhere near

11   Turkey.

12             MR. McCONNELL:  No, it is not.  So that was the

13   one consummated shipment that was in June 2022.  And then we

14   have communications where the defendant and his

15   co-conspirators are sitting on a large amount of parts that

16   were eventually recovered from the defendant's residence

17   here in Brooklyn, where they were attempting to figure out

18   an alternate route to move them.

19             THE COURT:  So they were for sale in the United

20   States, to an individual or company in the United States to

21   be placed in drones, and then they were shipped to Estonia,

22   or some of them were shipped to Estonia.

23             MR. McCONNELL:  Yes.

24             THE COURT:  And they ended up in Russia.

25             MR. McCONNELL:  Yes.  Now, to be clear, these

PROCEEDINGS                    10

1    parts can be used in other things besides drones.  However,

2    the end user, which we were able to confirm from the

3    messages that were sent and the payment information and the

4    other evidence that we've outlined in our memorandum, that

5    company called SMT-iLogic, is a sanctioned entity, it is a

6    contractor with the Russian Ministry of Defense, and they

7    are a manufacturer of the Orlan-10 drone, which has been one

8    of the most prolifically-used drones in the conflict in

9    Ukraine.

10           So I want to make sure to impress upon the Court

11   the seriousness of the offense, but also to make clear that

12   in some of these schemes we have millions and millions of

13   dollars worth of shipments, whereas here we had a

14   conspiracy, which did last a substantial length of time, but

15   we only have one fully-consummated shipment that made its

16   way to Russia.  You'll see in the Probation Report and in

17   our sentencing submission, there were about 11,500

18   microelectronic components that were recovered and

19   successfully interjected before they could be shipped out.

20           THE COURT:  And how many of these devices are

21   implanted in one drone?

22           MR. McCONNELL:  That I couldn't tell you, Judge.

23   Their radiofrequency -- I don't know the answer to that.

24           THE COURT:  And they were then transported into

25   the Soviet Union from where?

1          MR. McCONNELL:  From Estonia.

2          THE COURT:  From Estonia.

3          MR. McCONNELL:  Yes.

4          THE COURT:  Do you know exactly how far Estonia is

5   from Turkey?

6          MR. McCONNELL:  I think it's quite far.

7          THE COURT:  If you were driving, you would have to

8   go through nine or ten countries to get to Turkey, and you'd

9   probably have to get a boat.  Take a look.

10          MR. McCONNELL:  I think you might be able to make

11   it without a boat, but I agree it's a long way.

12          THE COURT:  Well, I don't know.  It depends on

13   which countries you go to.  I'm just saying that Estonia is

14   nowhere near Turkey.

15          MR. McCONNELL:  Not at all.  That I completely

16   agree with the Court on.

17          I do think the defendant's motive in this case was

18   not to necessarily fuel the war.  I think it was a pecuniary

19   gain.  He was making money.  He didn't make that much money,

20   but he did make some money, including points from using the

21   credit card to make these purchases.

22          But in terms of his role in the conspiracy, it was

23   minor compared to the other defendants, but it was certainly

24   necessary.  These conspiracies can't function without

25   someone physically based in the United States who's English

1   speaking, who can interact and interface directly with the

2   U.S. companies and help facilitate the false paperwork

3   that's necessary to get this stuff out of the country.

4           THE COURT:  Okay.

5           MR. McCONNELL:  That being said, in consideration

6   of all the 3553(a) factors, as we indicate in our sentencing

7   memorandum, there is significant mitigation in the case.

8   I'm sure counsel will be talking about the defendant's

9   background.  But from the Government's perspective, the

10  defendant -- I mentioned the minor role which is accounted

11  for in the guidelines.  When the defendant's house was

12  searched pursuant to a search warrant and the 11,500

13  microelectronic components were taken from his house, he was

14  cooperative, he agreed to be debriefed, and he met

15  repeatedly with agents to help further the investigation.

16          And the other point that I wanted to note that we

17  make in our memorandum is the timeliness of his plea.  The

18  Court sees lots of cases where individuals, for one reason

19  or another, don't accept responsibility, whereas here the

20  defendant did very, very early, and I think that is

21  significant.  It's not something that is accounted for in

22  the guidelines, and I think in the caselaw and the general

23  3553(a) analysis is something that's significant.  So while

24  I think there is a real general deterrent need here, as this

25  is a ongoing problem, these sorts of schemes and

PROCEEDINGS                          13

1   conspiracies are very difficult to detect, they're difficult

2   to penetrate, and they're difficult to stop.  And so general

3   deterrence is one of the most effective tools we have in

4   combatting them.

5           But I think the Court's sentence should also

6   reflect the defendant's post-approach from law enforcement

7   conduct where he was cooperative -- not up to the point of

8   earning a 5K1 letter -- as well as the timeliness of his

9   plea, because I think we want to incentivise that behavior

10  as well.

11          Thank you.

12          THE COURT:  Mr. Mirvis?

13          MR. MIRVIS:  Yes, Judge.

14          Your Honor, Mr. Grigorev has his family members in

15  the audience.  His grandmother, his parents, his wife.  All

16  of the people -- well, some of the people that submitted

17  letters on his behalf, they're all here.  So he does have

18  strong family support and strong community ties.

19          Judge, this is his first arrest or contact with

20  the criminal justice system.  As soon as he was arrested, he

21  did cooperate with the authorities and provided them

22  whatever information he had.  He submitted the information

23  to help the authorities with their investigation.  He made a

24  mistake.  He acknowledges his mistake.

25          He was on location monitoring bracelet for a good

1  period of time, to the point where Probation reached out and

2  contacted me and said he's a prime candidate to have the

3  location monitoring removed.  I contacted the Court.  He did

4  everything he needed to do as a defendant.

5        The conduct is serious, Judge, but I would submit

6  that a below guideline sentence of probation would be

7  appropriate for Mr. Grigorev's conduct.

8        THE COURT:  I'm just sitting here watching the

9  clock and wondering how many people are being bombed in the

10  Ukraine at this moment.  It's very peaceful here, but it's

11  not peaceful in the Ukraine.  The defendant --

12        I'll wait for you.  I'll wait for you.  I'll wait

13  for you.  Go ahead, I'll wait for you.  If there's something

14  you want to say to each other, you have every right to

15  consult with each other.  Go ahead.  I'll wait.

16        MR. MIRVIS:  Judge --

17        THE COURT:  When I speak, I expect you to listen.

18  But if you need to speak to each other, you have every right

19  to do it.  If there's something more you need to say, I'll

20  wait.  I'll wait.

21        MR. MIRVIS:  Judge, he's already spoken.  We'll

22  listen to Your Honor.

23        THE COURT:  Can I go ahead now?  Am I allowed?

24        MR. MIRVIS:  Yes, please, Judge.

25        THE COURT:  The Russians are levelling Ukraine,

1    and part of that effort is being done with drones.  When you

2    ship something to Estonia, you can expect that it's going

3    from Estonia to Russia, not to Turkey.  There are other ways

4    of getting goods to Turkey.  This was a business

5    arrangement.  It was a business transaction.  I understand

6    that.  But I'm concerned about the consequences.  We have to

7    make it clear that the rules have to be followed, because in

8    situations like this, people's lives are in danger and are

9    going to be lost.

10           One of the purposes of sentencing is to send a

11   message not only to the defendant, but also to others who

12   would engage in criminal activities such as this that if

13   they attempt to do so and are then caught, they will be

14   punished.  That's one of the considerations that we must

15   take into account when sentencing a defendant.  Deterrence

16   of criminal conduct is an essential consideration in

17   sentencing and to protect the public from further crimes of

18   the defendant and to protect the public from further crimes

19   of that nature.

20           I'd be interested to know what other activities

21   the defendant has engaged in which would demonstrate that he

22   has the ability to avoid recidivating once he's is released

23   from prison or from supervision of some kind.  To come in

24   here and just say a sentence of no jail time for this crime,

25   I'm at a loss for words.  Why is that enough?  That is the

1   question.  The Government has said they want an

2   incarceratory sentence.

3                MR. McCONNELL:  Yes.

4                THE COURT:  They're not asking for a sentence

5   within the guideline.

6                MR. McCONNELL:  Judge --

7                THE COURT:  Stop.  I'm not done.

8                The defense says let him go home.  What's the

9   message that's going to be received if I just, you know,

10  like a grade school teacher, scold the person who did the

11  wrong thing and say now you can go home?  What's that all

12  about?

13               Yes?  You were going to say something?

14               MR. McCONNELL:  Judge --

15               THE COURT:  You put it in your papers.

16               MR. McCONNELL:  Yes, and I'm not retreating from

17  that position.  The reason why it was phrased that way, Your

18  Honor, was merely to account for the *United States v.*

19  *Fernandez* decision and the defendant's attempt at

20  cooperation with law enforcement, not in any way to minimize

21  the --

22               THE COURT:  Well, I give credit to the defendant

23  for his effort to be cooperative once he was caught.

24               MR. McCONNELL:  Understood.

25               THE COURT:  I give him credit for that.  And I

1  won't give him a guideline sentence because of that.

2           MR. McCONNELL:  That's all the Government was --

3           THE COURT:  Counsel's not arguing for a below

4  guideline sentence.  He's arguing for no sentence.

5           MR. McCONNELL:  And the Government opposes that.

6  We do not think that that's appropriate.

7           THE COURT:  I think the defendant's actions were

8  thoughtless, irresponsible, and devious, and handed this

9  country's adversary, Russia, a tool to attack a country

10 which is an ally of the United States.  That's what we have

11 here.  For profit.  For profit.

12          Is there anything you'd like to say before I

13 sentence you, sir?  You're entitled to speak to the Court.

14          THE DEFENDANT:  Yes, Your Honor.

15          I would like to -- I would like to step away from

16 the text that I wrote and mention a couple of things.

17 Basically, this entire process was turned very political.

18 And going back to the timeline, I remind you that war

19 started in February 2022.  The shipment we made took place

20 in June of 2022; so basically, like the prosecutor said,

21 after the war started.  At the time, the company, SMT-iLogic

22 that we were dealing with, was not sanctioned.  And more

23 important, the information on that company, information that

24 that company is actually related to military, came out in

25 December of 2022.  I, under no circumstances, knew that

1    company had any connection with Russian military, and I

2    could not know because the detailed investigation was

3    performed by the -- by Reuters, I think it was, and they

4    came out with the article in December of 2022 where they

5    actually named that company as the one that was related to

6    military.  And that was in my indictment, I think, that I

7    discussed this with my codefendants that this article came

8    out and look who those guys are.

9              So at the time when we were making that one

10   shipment, at least I did not know who those guys were.  And

11   if I did know, I would under no circumstances start dealing

12   with my friends and shipping goods to that company to begin

13   with.

14             THE COURT:  What are the -- and I'm not asking you

15   to testify here.  That's not the idea.  I appreciate what

16   you said.  But the papers indicate that the purpose of the

17   shipment -- I'm going to ask the Government this because

18   it's your case -- that the purpose of the shipment was to

19   send these parts to Turkey.  Isn't that the rationale that

20   was presented to you by the defendant during this process,

21   or am I misunderstanding what was going on?  Was it always

22   to send the shipment to Russia?

23             MR. McCONNELL:  Yes, it certainly was.

24             THE COURT:  Well, what was this thing about

25   Turkey?

PROCEEDINGS                    19

1        MR. McCONNELL:  I think that was designed to

2   create the appearance of a false end user.  The goods were

3   then redirected to Estonia, where they could be easily

4   smuggled across the border.

5        THE COURT:  By whom?  Who was making those

6   representations?  Who was offering that plan?  Was it the

7   defendant, according to the Government, or was it some third

8   party?

9        MR. McCONNELL:  The rerouting of the shipment from

10  Turkey to Estonia was certainly discussed by the defendant

11  and the other charged co-conspirators, and some of those

12  chats, I believe, were referenced in our papers and in the

13  Probation Report.  The defendant is correct that SMT-iLogic

14  was not sanctioned until after the June shipment we're

15  talking about was made, which is why there is no IEEPA

16  sanctions evasion charged.  The charge is falsifying the

17  export data indicating that the goods were going one

18  place --

19        THE COURT:  When they went somewhere else.

20        MR. McCONNELL:  -- and they were sent to another.

21        THE COURT:  They went to another place.

22        MR. McCONNELL:  Correct.

23        THE COURT:  And that is a crime.

24        MR. McCONNELL:  Yes.

25        THE COURT:  What is the defendant doing for a

PROCEEDINGS                    20

1   living now that he's been out on pretrial release since he

2   was indicted?  He was arrested on November 1, 2023.  What

3   has he been doing?

4          THE DEFENDANT:  I've been working as a cab driver,

5   and I've been caring for my grandmother.

6          THE COURT:  I see.

7          THE DEFENDANT:  And, I mean, I do other things

8   such as household moving, handyman jobs and --

9          THE COURT:  But you're not in the business of --

10          THE DEFENDANT:  No, not anymore.

11          THE COURT:  -- parts?

12          THE DEFENDANT:  I was not in the business ever

13   since the end of 2022, pretty much.

14          THE COURT:  I see.

15          Anything else from the Government?

16          MR. McCONNELL:  No, Your Honor.  Not unless

17   there's any questions from the Court.

18          THE COURT:  I've asked all of my questions.

19          Anything else from you, Mr. Mirvis?

20          MR. MIRVIS:  Nothing from me, Judge.  Does the

21   Court still want to hear what Mr. --

22          THE COURT:  Yes, I'd like to hear the statement

23   you prepared.  That would be helpful.

24          THE DEFENDANT:  If you would allow me, I would

25   read from the paper.

1        THE COURT:  Of course.  Read slowly, though.

2        THE DEFENDANT:  Yes, I will.

3        Your Honor, I would like to thank you the Court

4   for giving me the opportunity to address you directly.  I

5   come before you with a deep sense of regret for my actions.

6   I take full responsibility for my involvement in attempting

7   to circumvent U.S. sanctions, and I understand it was a

8   violation of a law.  I failed to consider the potential

9   consequences of my actions, and I now realize that my

10  behavior was not only illegal, but also, as I have since

11  come to understand, could undermine the security of our

12  nation.  For this I am deeply sorry.  I have reflected

13  extensively on the choices I made and the impact they have

14  had.  If I were given the opportunity to relive those

15  moments, I assure you that I would never repeat such

16  conduct.  I have sought to educate myself on the importance

17  of ethics and legal compliance, and I have pursued

18  professional counseling to guide my participation in any

19  future ventures.  I deeply regret the pain and

20  disappointment I have caused to my family, who have always

21  viewed me as someone who acts with honesty, integrity, and

22  respect for the law.

23       As I stand before you -- as I sit before you, I do

24  not seek to excuse my actions, but rather to express my

25  genuine remorse and my commitment to making amends.  I am

PROCEEDINGS                    22

1    prepared to accept the Court's decision and will use this

2    experience as a catalyst for positive change in my life.

3    Once again, I deeply regret my actions and I assure you that

4    I have learned a valuable lesson, one that will guide me for

5    the rest of my life.

6              Thank you.

7              THE COURT:  Thank you.

8              Officer Nikolaidis, where in the PSR is the

9    information about the defendant's education?

10             THE PROBATION OFFICER:  Your Honor, page 11,

11   beginning at paragraph 66.

12             THE COURT:  Did you go to Baruch College

13   undergraduate as well as getting a master's degree?

14             THE DEFENDANT:  I have to Brooklyn College for

15   undergraduate.

16             THE COURT:  You went to Brooklyn College.  Okay.

17   Because I didn't see anything about Brooklyn College there.

18   But you went to Baruch for master's degree?

19             THE DEFENDANT:  Yes, that is correct.

20             THE COURT:  Oh, I see.  It is there in paragraph 69.

21   Thank you.

22             Well, I will say that I very much appreciate your

23   statement.  I appreciate that you were candid with the

24   Government when you were arrested and provided the

25   Government with accurate information.  Is that correct?

1      MR. McCONNELL:  Yes.

2      THE COURT:  And that you've made, unfortunately, a

3  major mistake that you've told me that you are sorry about.

4  You know, part of sentencing is trying to find a way to

5  maximize the opportunity for the defendant to remediate what

6  went wrong.  That's really it.  I don't think your highest

7  and best talent is to be an Uber driver, all right?  You

8  need to be doing something that is productive and helpful to

9  your country, and your country is the United States.  You

10  have a family that loves you.  I'm trying to figure out a

11  way not to make this worse, but to make it better for

12  everybody.

13      (Pause in proceedings.)

14      THE COURT:  Why is it that you have so many cars?

15  I'm looking -- wait.  Let me just point this out.  A Jeep

16  Compass; a Honda; a Ford; a Jetta; a Tesla; a Ford Mustang;

17  a Dodge Caravan; a Honda Civic; a Honda Accord; a Fiat.  Are

18  you running a car dealership?

19      THE DEFENDANT:  Basically, one of the side

20  activities that I do is buying cars from sheriffs' auctions.

21      THE COURT:  Sheriffs' auctions?

22      THE DEFENDANT:  Yes.  Well, marshals' auctions

23  that, you know, they take place all over the city in five

24  locations.  Basically this is, like, my inventory.  I think

25  I've sold a couple of cars out of that list already.

1          THE COURT:  Oh, you did?  I'm sorry.  It's not up

2   to date.

3          THE DEFENDANT:  Yeah, at this point a couple of

4   those are gone.  So every now and then I go there and I

5   basically purchase a car.

6          THE COURT:  All right.  I've considered all the

7   factors under 3553(a) of Title 18.  I've considered all of

8   the arguments of the attorneys.  I've considered your very,

9   what I consider a very sincere, heartfelt and articulate

10  statement, or statements, which I very much appreciate.  And

11  I think that not having come to the sentencing with any

12  preconceived view on what the sentence should be, that the

13  sentence I impose upon you is going to be sufficient but not

14  greater than that necessary to fulfill the purposes of

15  sentencing.

16         You can be an extremely productive citizen of the

17  United States and of this community, and I'm going to give

18  you that opportunity.  It's really up to you.  The mistake

19  that you made did have, or could have had if it didn't have,

20  dire consequences for people.  You understand that it was a

21  mistake.  You're remorseful.  So I'm going to impose a

22  sentence that I think takes everything into consideration.

23         Please stand up.

24         I sentence you as follows:

25         I sentence you to four years of probation, and

1  with a -- is there restitution here?  There's an order of

2  forfeiture.  What is the order of forfeiture?

3        MR. McCONNELL:  Yes, the order of forfeiture is

4  for the 11,500, approximately, microelectronic parts that

5  were seized from the defendant's house.

6        THE COURT:  I have a preliminary order of

7  forfeiture which I think I've signed.  I signed it on

8  August 13, 2024.

9        Are you going to give me a final order of

10  forfeiture or I can just attach this?

11       MR. McCONNELL:  I think you can attach it.

12       THE COURT:  And I'll attach the order of

13  forfeiture.  I'm going to impose a fine of $150,000 on the

14  defendant to be paid within 30 days.  There is a $100

15  special assessment which is mandatory.

16       Mr. Mirvis, are you aware of the recommended

17  special condition?

18       MR. MIRVIS:  I am, Judge, yes.

19       THE COURT:  Does the defendant agree to that?

20       MR. MIRVIS:  Yes, Judge, that's right.

21       THE COURT:  I'm going to impose the following

22  special condition of probation:  The defendant shall

23  cooperate with the U.S. Probation Office in the

24  investigation and approval of any position of self

25  employment, including any independent, entrepreneurial or

1    freelance employment or business activity.  If approved for

2    self employment, the defendant shall provide U.S. Probation

3    Office with full disclosure of his self employment and other

4    business records, including but not limited to all of the

5    records identified in the Probation Office form 48F, Request

6    for Self Employment Records, or as otherwise requested by

7    the U.S. Probation Office.

8              So I've imposed the fine, the forfeiture.

9    Inasmuch as no incarceratory sentence has been imposed,

10   there's no need to discuss the fact that you had agreed at

11   the time of your plea that you would not appeal or otherwise

12   challenge the sentence that I impose upon you if it is 41

13   months or less.

14             You have the right to appeal your sentence to the

15   U.S. Court of Appeals for the Second Circuit if you believe

16   the Court has not properly followed the law in sentencing

17   you.  Your time to appeal is extremely limited.  You should

18   discuss it your attorney at once whether an appeal would be

19   worthwhile.

20             Are there open counts?

21             MR. McCONNELL:  There are, and the Government

22   would move to dismiss them at this time, Judge.

23             THE COURT:  All open counts are dismissed on

24   motion of the defendant.

25             Anything else from the Government for today?

PROCEEDINGS                          27

1          MR. McCONNELL:  No, Your Honor.  Thank you very

2    much.

3          THE COURT:  Mr. Mirvis, anything else from the

4    defense?

5          MR. MIRVIS:  Nothing further, Judge.  Thank you.

6          THE COURT:  All right.

7          Sir, I really do think that you have the talent,

8    the skill, the intelligence, and the ability to be a model

9    citizen and help your community, and I think that not only

10   should you be helping your family, but your community.  We'll

11   chalk this situation up to a very serious mistake, but it

12   shouldn't be the mistake that prevents you from leading a

13   successful, law-abiding life.  I wish you and your family well.

14         We're adjourned.

15         MR. MIRVIS:  Thank you, Judge.

16         MR. McCONNELL:  Thank you, Judge.

17         THE COURT:  Thank you.

18         (Matter adjourned.)

19                          *   *   *

20

21              CERTIFICATE OF REPORTER

22   I certify that the foregoing is a correct transcript of the
     record of proceedings in the above-entitled matter.

23

24    /s/ Kristi Cruz

25   _____
     Kristi Cruz RMR, CRR, RPR
     Official Court Reporter